# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ENCOMPASS HOME AND AUTO INSURANCE COMPANY<br><br>v.<br><br>DAVID DENENBERG | CIVIL ACTION<br><br>NO. 18-1365 |

**Baylson, J.**                                                                         **March _13, 2019**

## MEMORANDUM RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In this motion for summary judgment, Plaintiff Encompass Home and Auto Insurance Company seeks a declaration regarding its duty to defend and indemnify Defendant David Denenberg under the terms of an automobile insurance policy. This matter is related to an ongoing personal injury action in Pennsylvania state court, where Denenberg is named as a defendant and Plaintiff is so far tasked with defending and indemnifying him under the insurance policy at issue here. For reasons discussed below, summary judgment for Plaintiff is GRANTED.

## I. UNDISPUTED FACTS

The following is a fair account of the factual assertions at issue in this case, as taken from Plaintiff's Statement of Undisputed Facts (ECF 10, "SUMF") and not genuinely disputed.

Defendant and William Shaid are partners in a company known as Billgene, L.P., which buys, sells, and/or rents residential real estate. SUMF ¶ 4. At some point, Defendant contacted Sears to order a stove and Billgene hired a company owned by Richard Kearns to pick up the stove from Sears and deliver it. Id. ¶¶ 5–6. Kearns's employee, James Thornton, drove a Ford Ranger, a pickup truck with a cap,[1] to pick up the stove. SUMF ¶¶ 7–8.

---

[1] Defendant explains that a Ford Ranger is a "tiny pickup truck." See Def.'s Resp. to SUMF (ECF 11-3) ¶ 8.

1

The events that transpired next are the subject of a complaint filed by Christopher Gittens on March 6, 2018, in the Philadelphia Court of Common Pleas (the "underlying complaint"). Id. ¶ 1. The underlying complaint named Denenberg—Defendant in this action—as a defendant, as well as Shaid, Thornton, Kearns, various allegedly related corporate entities, and Billgene. Id. ¶ 1; see also Exhibit A to Mot. (ECF 10). The underlying complaint alleges that Gittens was a Sears employee on March 10, 2016, when he was struck in the head by the hatch of the defendants' vehicle while loading the range into that vehicle. Id. ¶ 2.[2] The underlying complaint further identifies Thornton as the operator of the vehicle at issue. SUMF ¶ 3.

Plaintiff and Defendant in this action agree that neither Defendant nor Billgene owned the Ford Ranger at issue, and that neither Defendant nor any of his family members were involved in the alleged incident. Id. ¶ 9–11. The Ford Ranger was not listed in Defendant's automobile insurance policy held with Plaintiff, which was effective from September 1, 2015, to September 1, 2016. Id. ¶ 10, 12.[3] Rather, the vehicles covered by that policy are a 2010 Infinity G37, a 2007 Honda CR-V, and a 2009 Acura TL—none of which were involved in the alleged incident. SUMF ¶¶ 13–14.

The automobile insurance policy provides:

> If a claim or suit is brought against *you* or any *covered person* for:
> 1. ***Bodily Injury***; or
> 2. ***Property Damage***;
> caused by a ***motor vehicle accident, we*** will pay, except as excluded by the provisions listed in the **Personal Liability–Losses We Do Not Cover**, on your behalf:
> 1. Damages for which *you* or any *covered person* are legally liable; and

---

[2] Defendant denies that Gittens's injury occurred in the course of loading the range into the vehicle. Rather, Defendant contends that the injury occurred *after* the range had been loaded. Def.'s Resp. to SUMF ¶ 2.

[3] Defendant explains that, in addition to his Motor Vehicle Policy, he held a Homeowners Policy and an Umbrella Policy with Plaintiff. Def.'s Resp. to SUMF ¶ 12.

2. Damages including prejudgment interest awarded against *you* or any *covered person*;
up to *our* limit of liability.

Id. ¶ 15 (citing Exhibit D to Mot., ECF 10).

A "covered person" under the Personal Liability–Motor Vehicle heading means:

1. *You* and any *family member* for the ownership, maintenance or use of any covered *motor vehicle*.
2. Any other person occupying or using any covered *motor vehicle* with permission from *you* or a *family member*.
3. With respect to a covered *motor vehicle* that *you* own or that is shown on the Coverage Summary, any person or organization legally responsible but only for acts or omissions of any person included in 7.(a)(1) above.
4. With respect to a covered motor vehicle, other than one described in 7.(a)(3) above, any person or organization legally responsible but only for acts or omissions of any person included in 7.(a)(1) above. This provision applies only if the person or organization does not own or hire the motor vehicle.

Id. ¶ 16 (citing Ex. D).

## II. PROCEDURAL BACKGROUND

Plaintiff filed its Complaint on August 30, 2017. (ECF 1, "Compl."). The Complaint seeks a declaration that there is no insurance coverage under Encompass Policy Number 282004001 for Defendant as to Gittens in the underlying state-court matter. The Complaint further seeks a declaration that Plaintiff has no duty to defend or indemnify Defendant or any other defendant in the underlying state-court matter. The Complaint thus requests an Order authorizing Plaintiff's counsel to withdraw his/her appearance on behalf of Defendant.

Defendant filed an Answer with Affirmative Defenses on May 30, 2018. (ECF 3). Following some discovery, Plaintiff filed this Motion for Summary Judgment on November 6, 2018. (ECF 10, "Mot." or "Motion"). Defendant responded in opposition on November 20, 2018. (ECF 11, "Opp'n" or "Opposition"), and Plaintiff replied in support on November 27, 2018 ("ECF 12–13, "Reply"). The Motion is ripe for decision.

3

## III. LEGAL STANDARD

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (The nonmoving party "must do more than simply show that there is some metaphysical dispute as to the material facts"). Summary judgment is appropriate if the adverse party fails to rebut the motion by making a factual showing "sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## IV. DISCUSSION

The parties appear to be in agreement that the Motor Vehicle Insurance Policy does not, by its terms, provide coverage for the incident described in Gittens' underlying complaint. See Opp'n at 6; Reply at 3. Defendant argues instead that he is covered by the Umbrella Insurance Policy, Opp'n at 7, which reads as follows:

> *We* will pay damages for which a *covered person* becomes legally liable due to an occurrence resulting from a *personal injury*, *bodily injury or property damage*, up to the limit of liability shown in the Coverage Summary for "Personal Umbrella." Any payment is subject to the minimum retained limit, the exclusions listed in the section called **Losses We Do Not Cover** and the other provisions of this endorsement.

Reply at 4 (quoting Ex. D).

The policy defines an "occurrence" as:

> a. An accident including a series of related events resulting from continuous or repeated exposure to the same general conditions that causes *bodily injury* or *property damage* during the policy period; or
> b. An offense, including a series of related offenses, committed during the policy period, which results in *personal injury*. All losses arising out of such act or series of acts, regardless of the frequency thereof or number of claimants, shall be deemed to arise out of one offense.

Id. A number of exclusions act to limit the broad coverage seemingly provided by these provisions. Relevant to this dispute are the "loading and unloading exclusion" and the "business pursuit exclusion." As the Court discusses each below, we are mindful that exceptions and exclusions to liability are to be strictly construed against the insurer, with any ambiguity weighing in favor of the insured. Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006) (explaining that the Court must give effect to policy language that is "clear and unambiguous," but that ambiguous language must be construed in favor of the insured); Frisch v. State Farm & Cas. Co., 275 A.2d 849, 851 (Pa. Super. 1975) ("[E]xceptions to the general liability of the insurer are to be strictly construed against the insurance company.").

First, the Umbrella Policy explains that it does not cover "[b]odily injury or property damage arising out of the . . . loading or unloading of any motor vehicle," with a few exceptions not relevant here. See Ex. D, Personal Umbrella Coverage Endorsement—Loses We Do Not Cover ¶ 12; see also Opp'n at 8. The underlying complaint specifically alleges that Gittens was "attempting to load the kitchen range into the back of defendants' vehicle," and was injured "[a]s [he] was loading the kitchen range." Exhibit A to Mot. at ¶ 16. The Umbrella Policy's "loading and unloading exclusion" thus applies to bar insurance coverage related to Gittens' injuries. Defendant disputes that Gittens was injured while loading the kitchen range, and argues that this is a disputed material fact that cannot be decided on summary judgment. Opp'n at 8; Def.'s Resp. to Pl.'s SUMF (ECF 11-3) at ¶ 2; Def.'s Statement of Disputed Material Facts (ECF 11-2) at ¶ 1. However, it is well established under Pennsylvania law than an insurer's duties under an insurance policy are triggered by the language of the underlying complaint. See Kvaerner, 908 A.2d at 896. This Court is thus bound to the allegations within the four corners of the underlying complaint, regardless of whether Defendant might dispute them in state court. Because the underlying complaint alleges that injury occurred during the course of loading a vehicle, and because the Umbrella Policy expressly excludes coverage for injuries that arise out of such activity, Plaintiff has no duty to defend or indemnify Defendant under the terms of the Umbrella Policy.[4]

---

[4] Plaintiff alternatively argues that summary judgment is appropriate because coverage is barred under the Umbrella Policy by the "business pursuit exclusion," which excludes coverage for:
    a. ***Business*** pursuits of; or
    b. A ***business*** engaged in by:
***you*** or any ***covered person***, even if coverage for the business pursuits is included or endorsed on an underlying policy. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the ***business***.

The Umbrella Policy further provides that it will provide defense costs if the claim is covered by its terms, even if it is not covered by any underlying policy. But the claims at issue here are not covered by the Motor Vehicle Policy or the Umbrella Policy. Plaintiff therefore has no duty to indemnify or defend Defendant in the underlying state court action, and judgment will be entered for Plaintiff.

V. **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF 10) is GRANTED.

An appropriate Order follows.

O:\CIVIL 18\18-1365 Encompass Home and AUto Ins v. Denenberg\18cv1365 Memo re Mot for SJ

---

This exclusion does not apply to:
a. Activities which are usual to non-business pursuits; or
b. Part-time business pursuits of any covered person who is under 18 years of age.

See Ex. D, Personal Umbrella Coverage Endorsement—Loses We Do Not Cover ¶ 15. Defendant argues that the "business pursuit exclusion" should not apply to this case because the phrase "[a]ctivities which are usual to non-business pursuits" is ambiguous. Opp'n at 9–10; Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170, 1174 (Pa. 2006) (holding a policy will be found ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense"). Ambiguities must be "construed against the insurer." Buntin v. Continental Ins. Co., 583 F.2d 1201, 1207 (3d Cir. 1978).

Various courts have considered the ambiguity of policy language that excepts activity "usual to non-business pursuits." See 48 A.L.R.5th 375 (originally published in 1996); and compare Myrtil v. Hartford Ins. Co., 510 F. Supp. 1198 (E.D. Pa. 1981) (Ditter, J.) (determining that a clause excepting activity "usual to non-business pursuits" in an insurance policy was ambiguous), with Bullock v. Pariser, 457 A.2d 1287 (Pa. Super. 1983) (declining to examine or apply a policy's "usual to non-business pursuits" clause because the activity at issue was clearly intended for business purposes).

In this case, it is unclear whether the transport of a range constitutes an activity that is "usual to non-business pursuits." Considering the number of court decisions examining the meaning of similarly worded policy exceptions, it is likely that this clause is capable of being understood in more than one sense. However, this Court need not make a definitive determination as to whether the language is "ambiguous" because we have already determined above that the "loading and unloading exception" bars coverage in the underlying state court action.

7